Good morning and may it please the court I'm James Laughlin and I represent the appellant Aaron Ramos. With the court's permission I'd like to reserve two minutes of my time for rebuttal. Unless the court would like me to do otherwise I plan to focus this morning on the government's improper misconduct during closing arguments and then address the sentencing issues if there's time. Mr. Ramos's defense relied on the Constitution's guarantees that he would be presumed innocent and the government would have to prove its case against him without a reasonable doubt. The government's closing arguments fatally undermine these constitutional rights by among other things misstating the burden of proof, shifting that burden to the defense, and misrepresenting key evidence. The government concedes that some of his arguments were improper and it describes other comments as at least unartful. It nevertheless contends that Mr. Ramos can't show that the government's conduct was prejudicial. As explained in the reply brief however there's actually an intracircuit conflict about who bears the burden of prejudice in cases like this. The court should follow the authority recognizing that just as with any other kind of trial error the government bears the burden to prove that the error was harmless. Well I suppose the question is whether the prosecutor's statement that you know the defense needs to show or needs to explain or something was corrected by what the court said when it came in right afterwards and said you know you take the burden of proof instruction from me. Well your honor I disagree that that was a sufficient cure for what the prejudice was because what the court said was you heard some questions I'll remind you that the government that the defendant is presumed innocent and the government bears the burden and that the defense doesn't have to present evidence. Nothing about what the court said said that the defendant did not have to answer the questions that the government said quote the defense needs to answer these questions. So I don't think that that instruction was sufficient to cure the error and then nothing that the government did you know after that I think cure the error either and I think that that's true with all of the errors that we're talking about this morning including the the government's argument that describing the reasonable doubt standard as no more significant than what a driver does when they change lanes. Yeah but didn't the court immediately jump all over that and advise the jury that the burden of proof doesn't change because of that I think he gave immediate instructions you know right after that was spoken. Again there was an instruction but I don't think it did what it had to do. The immediate instruction was both sides have given their versions of reasonable doubt I'm going to point you to the reasonable doubt I gave you which is in the written instructions. I made a note that you know tells me tell me if I'm wrong or not that at least on five occasions the judge told the jurors about the reasonable doubt standard. Also gave the jurors a copy of the charge. There was no questions raised by the jurors that expressed any concerns or any confusion about it. It seemed as if the judge made a concerted effort to repeatedly advise the jury about the proper standard. Well I think it is correct that the reason that this is a conscientious judge that repeatedly gave the reasonable doubt instruction but the problem is that she was a bit too cautious in directly addressing the government's conduct because she did not say you know that analogy they just gave you about driving a car it's nothing like that don't do that don't follow that. Because the judge did not say that that this case should be reversed because of that. That in conjunction with all the other errors and the resulting prejudice. But not by itself. I do think that that alone because the because this was a case that was hinged on a reasonable doubt and because reasonable the burden of proof beyond a reasonable doubt is what the jurors used to gauge all of the other trial evidence that misconduct more than anything else infected the rest of the trial. So I do think standing alone it would be need to resolve. But you rely upon other things to make your point. I do I would like to add one more point about the potential cure. So after the after the district court made that statement where she didn't where the court did not say that the government's analogy was wrong just said you should follow my written instruction. What the government said immediately after that was and I believe the written instruction will say to follow your common sense. Which to me they weren't backing away from what they said before they were seeming to double down on it saying yeah in common sense like you do in driving. So and keep in mind this came out during the government's rebuttal argument. So Mr. Ramos never had a chance to respond to that in his own argument. So so so that's a significant error. We've discussed the error of the of the shifting of the burden which I think under this court's precedent when someone when a prosecutor gets up there and says that the failure to respond to certain or explain away certain purported weaknesses of the defense case means you have to find somebody guilty. That amounts to shifting the burden. Well we get this all the time. I guess I bring my biases here as a visiting district court judge from Brooklyn. And you know it's not unusual for the government there are some situations to point out fallacies or weaknesses in the defendant's case. We see this all the time. I think that's all that happened here. I don't think there's anything here where the judge said that or the prosecutor said that you have to find this person not guilty because of this. I respectfully disagree your honor because certainly it is the the job of of government counsel to point out what they think are the strengths in its case and the weaknesses in the government's case. But what it can't do is cross that line to say the defense needs to answer these questions. Because what that says is the word need is pretty unequivocal. It's not ambiguous. It means if they don't answer those questions then you have to do what I said which is convict him. Yeah but we get this type of stuff you know when he stands up you know he asks whether he's going to say this or that. And then the judge automatically says that you know bear in mind that you know the standard is not changed because of that. Defendant doesn't have to do anything whatsoever. Reasonable doubt is what the standard is. I think basically isn't that what the court said here? No I think again I think that the court gave some kind of curative instruction but fell short and this is true when it came to the third major misconduct too which is misstating the evidence about where the drug transaction occurred. In a case like this what a court should do is say that was wrong. You do not need to answer those questions. Or that was wrong. This is not reasonable doubt is not like changing lanes. And I can understand why the court you know might be a little hesitant to do that but when there's such significant government misconduct the only clear remedy is stepping forth and telling the jury this is wrong. Those lesser limiting instructions may seem like enough to us as lawyers and judges who deal with this all the time but for lay people they hear the defense doesn't have to present any evidence they're presumed innocent. It's like well she didn't say anything about the questions. Were the objections taken through all of this by defense counsel? I'm sorry. Were objections taken on the spot through all of this? Yes. There were objections. Was there a request by defense counsel that the court should give a particular charge or I just am not clear about that. Okay well with regard to the misstating of the defense evidence with the what the I mean the evidence about the transaction the defense actually asked the court to read the relevant testimony to highlight that what the court what the government had just said was wrong. And then I think the jury said it will be corrected I'm sure and the government then did correct it on the rebuttal evidence on the rebuttal argument. Again I think what the government did fell short because what the government did the government didn't get up there and say you know what I made a mistake that thing about laughing boy living in the back house and not the garage that was wrong here's the correct testimony. The government got up and said hey you know I was kind of rushed before let me reread this testimony again a little bit in full. I criticize people for this all the time and I'm terribly sorry I forgot to shut this off. Okay go ahead I'm sorry. So anyway what the government said was well let me just read this and with the hope that the jury would make the connection that oh that's slightly different from the testimony you read in you an hour ago. I do want to interrupt you have about one minute left but we'll give you the minute for rebuttal but take a minute or so on your sentencing argument. Oh certainly there's two issues either one of which requires reversal. The first issue is that the Mr. Ramos asked for a mitigating role adjustment and rule 32 requires that any factual disputes that can affect guideline calculations must be made by the district court and there's no evidence that the court made them here and this is particularly significant that just several months before the sentencing the commission modified the application note for 3b 1.2 to set forth a list of factors that are factually dependent and there's no indication that the the probation office did that the district court did that and I think that that requires a reversal because this court can't make the factual findings on their own and then the second one the second sentencing issue is regarding allocution and it's pretty clear that the rule 32 obligates a judge to personally invite the defendant to allocute and here the only statement made was I do want to hear from Mr. Ramos if he wants and then the district court accepted defense counsel's declination of that offer and and that just doesn't comply with rule 32 there there has to be a personal invitation I will note that the government the government says that well there was a personal invitation because she used the word Mr. Ramos rather than defendant or client but the use of the third person makes it pretty clear and the government doesn't dispute that if rule 32 is violated then it amounts to a plain error violation of rule to 32 that requires reversal thank you thank you good morning may it please the court Jeff Mitchell on behalf of the United States I was the prosecutor who tried this case in the district court as we've conceded in our briefs the analogy I used in my closing misstated the reasonable doubt standard and I also misstated the witness testimony the question for this court I believe is whether my attempts to correct the record during my closing and the district court's curative instructions whether or not those were adequate I'd like to start off by talking about Miss Ramos's testimony as I've indicated I just misunderstood her testimony but as the court noted I stood up in my rebuttal I told the jury that I had skipped some lines and then I read the two that were relevant to try to clear up the issue and then at that point it was clear to me that I did not understand the nature of my mistake so I just avoided the topic for the remainder of my rebuttal but the mistake is not relevant because there was no evidence introduced at trial that showed where or which structure the deal took place in now the closest that we came to this was during special agent Lopez's cross-examination and he testified that the informant told him that the deal took place in a back bedroom conversion garage but this was hearsay the district court said it was hearsay and told the jury that this was only being admitted to show whether or not special agent Lopez conducted a thorough investigation so and even if the jury took this as truth we don't have any evidence to try to kind of line up the testimony from special agent Lopez which was that it was a back bedroom conversion garage to how Mrs. Ramos described it one as a back house and one as a garage so we don't know if the back bedroom conversion garage is the back house or the garage so even if the jury was confused about whether laughing boy lived in the back house or the garage it doesn't matter as for the my government's the questions that I had at the end of my summation as the district court noted this came at the end of an hour or so of me describing the evidence and talking about the elements that the government must prove and it was at that point that I turned to the defense theory and I argued that even if you believe everything that they say he's still guilty of attempt he's still guilty of conspiracy and then I went about trying to poke holes in their defense theory and the way I tried to do that by using these questions as a rhetorical device to show that their theory was not supported by the evidence and halfway through my very first sentence I caught myself saying that these are questions I want the defense to answer and when I heard myself say I want I panicked a little bit because it made it sound like I was making it personal I was trying to inject my personal opinion so I tried to improvise on the spot rephrase mid-sentence and I got changed today and want to got changed to need to and even though this didn't come out the way I intended I think what's important is not what I said but what I didn't say I didn't say that these are questions that they need to answer and if they fail to answer them adequately you must find him guilty but that's the holding from United States versus Vandering which held that it's common practice for prosecutors to challenge the other side to make them answer or address uncomfortable facts and it's only burden shifting if the government takes it a step further and says that it's only burden shifting if they argue that a failure to answer these uncomfortable facts requires a guilty verdict. So what usually happens from my experience is that when the prosecutor does use that tactic so to speak to point out arguably the fallacies of the defendant's case usually they follow it up immediately by telling the juror but remember that the burden never shifts it's always proof beyond a reasonable doubt. I don't know whether you did that here or did you just let it go. I indicated that the government has the burden five times I don't recall. That particular time though. I don't believe I did. I don't think you did it would have been good if you did that. Yes your honor it would have. But the court also told them that the government has the burden 15 times. So in total the jury heard that the government has the burden 20 times. So and I understand that the district court came in and interjected again at the beginning of the recess and specifically referred to the government's questions and said the government has proposed questions but I just want to presume innocent he need not put on any evidence and it's the government's burden to prove the defendant guilty beyond a reasonable doubt. So even though I didn't say it the district court did. And I think the district court's instructions are much more forceful than if the government said it. With Judge Reinhart's permission perhaps I could ask you about the Rule 32 issue. As I read the record the judge did not really focus specifically on the defendant factors that needs to be considered to determine whether there should or should not be a mitigating role adjustment. There was some casual commentary. The judge I think just said well I adopt the sentencing guide by calculation. I think it was 30. And it seems to me that the probation department's got it right. It was kind of like not as expressed and specific as perhaps we would like it to be. What do you say about that? Well I agree with the court that it was not expressed or explicit as it could have been. But the district court indicated that it had reviewed defendant's objections. And I think that was on excerpt of record 42. And it then adopted the PSR calculations after that. It just adopted the calculations. It did not adopt the PSR report. A lot of times you know we stop and say there's no exceptions to the PSR. We adopt the factual statements in the PSR. There's no objection to that. We don't have to have a fabrical hearing or anything of that nature. A little bit more specific about it. Here the judge sort of like I guess had a lot to do but sort of could have done a little bit more so. But you don't think it's fatal do you? I don't. And as to the defendant's factual objections, I believe there was only one that related to the role adjustment. And that was related to paragraph 14. And the objections were minor objections. And even if the court sustained that particular objection to that paragraph, the uncontested facts in the PSR describing the deal support the denial of a role adjustment. And then the other aspect here in terms of sentencing as Judge Reinhart mentioned was whether or not the defendant should be specifically addressed by the court rather than to go through the lawyer I guess. And it seems to me that that is something that the district court should have done. I mean I do this all the time but you know automatically. Again, I agree with the court that it could have been phrased differently but... It could have been. Isn't there the rule specifically that he has to address the defendant, not the lawyer? He has to give the defendant personally the opportunity to come and answer the question does he want to allocute? Well I agree, Your Honor, that it requires a personal invitation. But I think the way it was phrased was a personal invitation. What was said, obviously I do want to hear from Mr. Ramos if he wishes to be heard. No? Is that what you consider a personal invitation to Mr. Ramos? It is, Your Honor. I mean I think this case can be distinguished from some of the other cases that the defendant cited because in those cases there was a clear colloquy between the court and the counsel and the court would ask the counsel does your client wish to be heard? And this wasn't a question to counsel, does your client wish to be heard? This was I'm done talking to you, I now want to hear from Mr. Ramos. And everybody turned to Mr. Ramos and there's a clear nonverbal response here that prompted the judge to say no. Unfortunately it's a nonverbal response, but I believe everybody... But you didn't say I do want to hear from Mr. Ramos if you want to be heard. You said if he wants to be heard, so that must have been addressed to someone other than Mr. Ramos. My recollection is that it was addressed to Mr. Ramos. Would you say to Mr. Ramos if he wants to be heard? That's not the ideal word choice, but... Well this seems to be full of non-ideal occurrences. Yes, absolutely. And I know that happens in a lot of trials. Nothing's ideal in this world. You know, it seems what's missing to me is that we don't have anything on the record where Mr. Ramos says no, I don't want to be heard. We just have the lawyer speaking for the defendant without any colloquy between the two of them. It almost seems as if the defendant... It would be different if we heard from the defendant. I believe the defendant did indicate something, and I believe it was my failure to stand up and say, Your Honor, will the record reflect that the defendant was shaking his head? We don't have that. We don't, Your Honor. That is correct. And it seems to me that's sort of important, because I can share with you my experiences a lot of times when I specifically ask the defendant if he or she wishes to speak, and if they speak, it makes a difference on my sentence. And we don't have that here. I don't have any comfort level that he specifically said, I do not want to talk. And I think that's what troubles me. And I think that, you know, he should have been given that opportunity. If it goes back for that reason, how about the Rule 32? Should we put that in the soup as well? Your Honor, if it does go back, I think clarification and giving the defendant the opportunity would be wise. And maybe the Rule 32 determination could be reconsidered at the same time, possibly. Because you're talking about, what, 168 months here? It's a long period of time to spend in jail. It is, Your Honor. But it's a lot less than what I was asking. I mean, this defendant had a long history of violence, which I described in the sentencing papers. I think that's also one of the reasons why he didn't want to talk, because I had just of serious violence. But if it does go back, then yes. If it goes back, does the judge have the right to increase the sentence? I don't know, Your Honor. I would like to... He can certainly increase it based on any subsequent conduct that may have occurred. I know that the court can consider mitigating factors that happen after a sentencing, but I don't know if it can consider aggravating factors after the sentencing date. But the court can consider events subsequent to the sentence on the resentencing, anything that may have transpired in between. I don't know if anything did materialize, but I think it's basically a sentence that would have to read as of the date of the resentence. I believe that is correct, Your Honor, especially for the mitigating factors. All right. I think the time has expired. Thank you. Thank you, Your Honor. I just want to make one more point on the government misconduct issue, because I think at this stage the government still isn't owning up to what it did. And in particular, I'm talking about the government's argument that the location about the drug deal wasn't all that significant because of what the agent said or whatever. But this is on page 426. This is the government's argument of the excess of record. It says, you saw Sharon Pias walking into the garage, not the back house. There's more information on that. And then Sharon Pias is not walking into the back house. She's walking into the garage to make this phone call. Then it says, now here's the conflicting part. Alice Ramos, the defendant's mother, said Laughing Boy rented the back house. And that's when the government then misreads the testimony where the testimony is actually he rented that middle garage to make it misleadingly seem like she rented the back house. And even now the government's saying, like, oh, then it's a mistake. It wasn't significant. But they're making it significant. They're the ones saying, hey, her boyfriend's in the back house. She's going to make this critical phone call in the garage. Case closed. So I think that the government's conduct is there in the district court. I think it's continuing. And, therefore, I think the court should not only reverse the convictions, but should also grant the relief request in both the opening and the reply brief, which is pursuant to Kajayan. It should remand for a hearing to find out whether dismissal with prejudice is actually a sanction given the willfulness of those conduct. Thank you. Thank you. Case disargued will be submitted.
judges: Canby, Reinhardt, Block